# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    **Plaintiff,**

    **v.**                                         **Case No. 17-CR-50**

STEVEN G. O'CONNELL et al.,

    **Defendants.**

## ORDER AND RECOMMENDATION ON DEFENDANTS' PRETRIAL MOTIONS

On March 7, 2017, a grand jury in this district returned a seven-count indictment charging Steven G. O'Connell, Peter J. Mark, Christy L. McNamee, Grede, LLC, and Grede II, LLC with violating federal asbestos regulations, conspiring to defraud the United States, making willful false statements to the government, and acting corruptly to impede a federal investigation. The defendants have pled not guilty. A final pretrial hearing and jury trial are scheduled for January 11, 2018 and January 22, 2018, respectively, before the Honorable William Griesbach.

Before me are defendants' pretrial motions: (1) joint motion to dismiss Counts 2, 4, and 5 and strike paragraphs 64 and 65 of the indictment; (2) joint motion to dismiss either Count 4 or Count 5 as multiplicitious; (3) joint motion to dismiss Counts 1, 3, 4, 5 and 6 of the indictment and to prohibit evidence of asbestos testing results; (4) defendants O'Connell, McNamee and Grede's motion to dismiss Count 7, or in the alternative for a bill of particulars; (5) joint motion to preclude the government's expert witnesses from offering testimony; (6) joint motion in limine: government's expert witness testimony—inadequate

testimony; (7) joint motion to sever Count 7; (8) joint motion for independent testing; (9) joint motion for notice of intent to use other acts of evidence; (10) joint motion for early disclosure of summary evidence; (11) joint motion for a bill of particulars: unindicted co-conspirators; and (12) joint motion for pretrial proffer of co-conspirator statements. I will address each in turn.

## INDICTMENT ALLEGATIONS

Grede and Grede II operated the Grede Foundry in Berlin, Wisconsin. Peter Mark was the Director of Corporate Safety, Health & Environment for Grede and Grede II. Christy McNamee was the Safety Coordinator at the Grede Foundry. Steven O'Connell was an operations manager and plant manager at the Grede Foundry. Beginning in 2011, Grede Foundry sought to refurbish an old manufacturing oven in order to "heat-treat" machinery equipment on site. The indictment allegations stem from the events regarding the refurbishing of the heat-treat oven. Broadly, the indictment alleges that the defendants permitted their workers to remove asbestos-containing insulation from the top of the heat-treat oven without following proper safety precautions, negligently released asbestos and submitted false statements to a government agency.

Specifically, Count 1 of the indictment charges the defendants with conspiring to defraud the government in violation of 18 U.S.C. § 371. Count 2 alleges that the defendants submitted a false statement in violation of 18 U.S.C. § 1001. Count 3 alleges that defendant Christy McNamee submitted a document containing false representations in violation of 18 U.S.C. § 1505. Count 4 alleges that defendants obstructed a pending proceeding by submitting a false statement in violation of 18 U.S.C. § 1505. Count 5 alleges that defendants obstructed an official proceeding by submitting a document containing false

statements in violation of 18 U.S.C. § 1512(c)(2). Count 6 alleges defendants violated the Clean Air Act and federal asbestos regulations in violation of 42 U.S.C. §7413(c)(1). Count 7 alleges that defendants negligently released asbestos and placed one or more persons in imminent danger in violation of 42 U.S.C § 7813(C)(4).

## ANALYSIS

*1.    Defendants' Joint Motion to Dismiss Counts 2, 4, and 5 and  to Strike Two Overt Acts*

The indictment alleges on or about June 26, 2012 and June 28, 2012, the defendants delivered to the government a document entitled "Asbestos Awareness Training." This document included the statement that "[d]uring the reconditioning of the Heat Treat Oven some undisturbed material behind a wall was found to contain a small percentage of asbestos" and "[b]ecause this area was not disturbed, employees were not exposed to this asbestos." For the purpose of this motion, defendants concede that this statement was false. This statement is the basis for Counts 2, 4, and 5.

Count 2 of the indictment charges defendants with making a false statement in violation of 18 U.S.C. § 1001(a)(3). The parties do not dispute that "materiality" is an element of the offense that the government must prove. *United States v. Brantley*, 786 F.2d 1322, 1326 (7th Cir. 1986). The parties also agree on the definition of materiality. To be material, a false statement "must have a natural tendency to influence . . . the decision making body to which it was addressed." *United States v. Turner*, 551 F.3d. 657, 663 (7th Cir. 2008). Additionally, the parties agree that the false statement does not have to have an actual ill effect in order to be material, "as long as it is capable of having such effect." *Id*. (quoting *United States v. Ranum*, 96 F.3d 1020, 1028 n.12 (7th Cir. 1996)).

Count 4 alleges that the defendants did "corruptly influence, obstruct, and impede the . . . administration of the law under which a pending proceeding was being had before the United States Department of Labor's Occupational Safety and Health Administration ("OSHA") and the Occupational Safety and Health Review Commission . . ." in violation of 18 U.S.C. § 1505. (Docket # 1 at 26.) Count 5 alleges that the defendants did "corruptly obstruct, influence and impeded an official proceeding before the United States Department of Labor's OSHA and the Occupational Safety and Health Review Commission" in violation of 18 U.S.C. § 1512(c)(2). Both counts require that the government proves that the defendant acted "corruptly." Similar to "materiality," to satisfy the "corruptly" element, the government must prove "some relationship in time, causation, or logic between the defendants' action and the agency or department proceeding so that it may be said that the defendant's action had the natural and probable effect of interfering with the proceeding." *United States v. Matthews*, 505 F.3d 698 (7th Cir. 2007). For ease of reference, I will refer to both as the materiality element.

Defendants do not challenge the sufficiency of the indictment as to these counts. Rather, defendants argue that, pursuant to Rule 12(b)(1), Counts 2, 4, 5, and the related two overt acts should be dismissed because the government cannot prove materiality as a matter of law. The defendants' principle argument is that the false statement, which forms the basis of Counts 2, 4, and 5, is not material because it was submitted two weeks after OSHA closed its investigation and issued its citation. (Def's Mot. To Dismiss at 5, Docket # 55.) Defendants argue that because the false statement was submitted after OSHA's investigation concluded, it could not have the natural tendency to influence a federal agency. (*Id.* at 12.)

The government counters that the false statement was material because it was submitted prior to the parties executing the settlement agreement. (Gov't Resp. at 2, Docket # 75.) After issuing its citation, OSHA offered the defendants an opportunity to reduce their penalty if they provided evidence of their corrective actions. (*Id*. at 3.) The government asserts that the documents provided, including the Training Document, had an effect on the final settlement and was therefore material. (*Id*.)

I begin with the crux of the motion: whether the issues raised by this motion should be addressed by the court or reserved for a jury. Several considerations instruct that this is a matter for a jury. First, as discussed at the outset, the parties do not dispute that materiality is an element of each of the charges. Moreover, it is settled law that materiality is a question for the jury. *United States v. Beaver*, 515 F.3d 730, 740 (7th Cir. 2008) ("[T]he materiality of false statements is not a legal determination; it is, rather, a factual determination that is made by the jury only."). Further, "the Sixth Amendment guarantees a criminal defendant's right to have a jury decide each and every element of the offense with which he is charged, including the element of materiality when the defendant is charged with making false statements." *Id*. (citing *United States v. Gaudin*, 515 U.S. 506, 522-23 (1995)).

Next, while Rule 12(b)(1) does permit a defense to the charge to be determined prior to trial, this ordinarily involves questions of law. If the pretrial defense claim "is substantially intertwined with the evidence concerning the alleged offense, the motion to dismiss falls within the province of the ultimate finder of fact." *United States v. Yasak*, 884 F.3d 1001 n.3 (7th Cir. 1989). As the Supreme Court noted in *Gaudin*, whether a statement is material poses not a question of law, but a mixed question of law and fact, typically resolved by juries. 515 U.S. at 512. The Supreme Court further noted "[i]ndeed, our cases

have recognized in other contexts that the materiality inquiry, involving as it does 'delicate assessments of the inferences a 'reasonable [decisionmaker]' would draw from a given set of facts and the significance of those inferences to him … [is] peculiarly on[e] for the trier of fact.'" *Id.* (internal citation omitted).

Lastly, even where it is appropriate to decide a Rule 12(b)(1) motion pretrial, the facts must be undisputed and trial of the charges would not substantially assist the court in deciding the legal issue raised by the motion to dismiss the indictment. This is not the case here. For example, the parties dispute which date is relevant to the materiality inquiry: June 13, 2012—the date of the citation or July 3, 2012—the date of the settlement agreement. The government has not made (and is not required to make) a proffer of how it intends to prove its case. All that is before the court at this juncture is the indictment and the exhibits to the motion. Thus, a trial is necessary to develop the record on this contested element of the offense. Consequently, the court cannot assess the question of materiality without wading into the province of the jury. I, therefore, recommend that defendants' motion to dismiss Counts 2, 4, and 5 be denied.

I also recommend that defendants' motion to strike the two overt acts, paragraphs 64 and 65, be denied. Rule 7(d) of the Federal Rules of Criminal Procedure allows a defendant to strike surplusage from an indictment. This rule protects defendants against unnecessary allegations in an indictment that while not being relevant or material, may be prejudicial. *United States v. Peters*, 435 F.3d 746, 753 (7th Cir. 2006) ("Surplusage should not be stricken unless it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial."). In this case, because paragraphs 64 and 65 are essential to Counts 2, 4 and 5, they are not surplusage.

2.      *Defendants' Joint Motion To Dismiss Either Count 4 or 5 as Multiplicitous*

Count 4 charges defendants with a violation of 18 U.S.C. § 1505 and Count 5 charges the defendants with a violation of 18 U.S.C. § 1512(c)(2). Defendants argue that because § 1512(c)(2) is a lesser included offense of § 1505, the counts are multiplicitous.

Multiplicity is the charging of a single offense in separate counts of an indictment. *United States v. Starks*, 472 F.3d 466, 468-69 (7th Cir. 2006) (internal citation omitted). Multiplicity in an indictment violates the Double Jeopardy Clause of the Fifth Amendment by "exposing a defendant to the threat of receiving multiple punishments for the same offense . . . ." *Id.* The test for multiplicity is whether each count requires proof of a fact that the other does not. *Id.* (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). If a single element is needed to prove the offense in one count which is not required to prove the offense in the second count, there is no multiplicity. *United States v. Conley*, 291 F.3d 464, 470 (7th Cir. 2002) (internal citation omitted). The multiplicity test focuses on the statutory elements of the offenses being charged, not the proof offered to establish them. *Id.* (internal citation omitted).

In this case, § 1505 provides in relevant part that:

> [w]hoever corruptly . . . influences, obstructs, or impedes or endeavors to influence, obstruct, or impede the due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States . . . shall be fined . . . [or] imprisoned.

To obtain a conviction under § 1505, the government must prove (1) that a proceeding was pending before a department or agency of the United States; (2) that the defendant was aware of the proceeding; and (3) that the defendant "intentionally endeavored to corruptly influence, obstruct, or impede the pending proceeding." *United States v. Haracharik*, No.

IP05-0153-CR-01-T/F, 2006 WL 3201912 (S.D. Ind. Apr. 20, 2006); *United States v. Bhagat*, 436 F.3d 1140, 1147 (9th Cir. 2006).

Section 1512(c)(2) provides in relevant part that "[w]hoever corruptly . . . otherwise obstructs, influences, or impedes any official proceedings, or attempts to do so," shall be fined or imprisoned. To obtain a conviction under § 1512(c)(2), the government must prove that the defendant engaged in conduct that he "believes . . . [is] likely to affect a pending or foreseeable proceeding." *United States v. Burge*, 711 F.3d 803, 810 (7th Cir. 2013).

Defendants argue that to charge them with both is multiplicitous because § 1512(c)(2) is a lesser included offense of § 1505. I agree. A "proceeding" before a government department or agency for the purposes of § 1505 is not defined in the statute. However, cases characterize § 1505 proceedings as encompassing both investigative and adjudicative activities of an agency. *United States v. Senffner*, 280 F.3d 755, 761 (7th Cir. 2002); *United States v. Leo*, 941 F.2d 181, 199 (3d Cir. 1991) ("Governmental agency proceedings frequently embrace both investigative and adjudicative proceedings."). On the other hand, an "official proceeding" under § 1512(c)(2) is defined as any proceeding before a federal court, Congress, or federal agency. 18 U.S.C. § 1515(a)(1)(A)-(C). Thus, an official proceeding under § 1512(c)(2) is by definition a proceeding under § 1505. The only unique element between § 1505 and § 1512(c)(2) is that the proceeding must be "pending" under § 1505. Therefore, the government, in establishing a § 1505 violation also proves a § 1512(c)(2) violation. This makes § 1512(c)(2) a lesser-included offense of § 1505.

*United States v. Peel*, 595 F.3d 763 (7th Cir. 2010) illustrates this. In *Peel*, the defendant was charged with bankruptcy fraud under 18 U.S.C § 152(6) as well as obstruction of justice under § 1512(c)(2). The bankruptcy fraud claim stemmed from the defendant blackmailing

his ex-wife in exchange for foregoing her bankruptcy claim against him. *Id.* at 766. The Seventh Circuit held that because a bankruptcy proceeding was an "official proceeding" within the meaning § 1512(c)(2), establishing each element under bankruptcy fraud automatically established obstruction of justice under § 1512(c)(2). *Id.* at 767 ("The test was flunked here because convicting Peel of obstruction of justice did not require proof of any fact that didn't have to be proved to convict him of bankruptcy fraud."). Consequently, the court concluded that obstruction of justice was the lesser-included offense of bankruptcy fraud. Similarly here, the *Blockburger* test is failed because convicting defendants of obstruction of justice under § 1512(c)(2) does not require proof of any fact that does not have to be proved to convict them of the § 1505 violation.

The government argues that the term "proceeding" should not be assumed to carry the same meaning in § 1505 as it does in § 1512(c)(2). Specifically, the government asserts that the term proceeding in § 1505 applies to a "broad array of federal actions including investigative activities, as long as such investigations include the authority to issue subpoenas and administer oaths." (Gov't Resp. at 3, Docket # 76.) By contrast, the government argues that official proceedings under § 1512(c)(2) carries a narrower meaning—limited to quasi-adjudicative investigations or inquiries that involve the making of findings of fact and the issuance of rulings or recommendations for government action. (*Id.*) Thus, according to the government, Count 4 requires proof of a fact that Count 5 does not: an actual pending proceeding. Further, the government asserts that the unique element in Count 5 on the other hand, requires proof that the proceeding was "official" in the sense of being at least quasi-adjudicative. (*Id.* at 3-4)

This is not persuasive for two reasons. First, the adjudicative character of the proceeding is not unique to § 1512(c)(2). Proceedings under § 1505 also encompass adjudicative activities. *Leo*, 941 F.2d at 199 ("Governmental agency proceedings frequently embrace both investigative and adjudicative proceedings."). More importantly, the government fails to consider § 1515(a)(1)(C) which defines official proceedings for the purposes of § 1512(c)(2) to include a proceeding before a government agency. Returning again to the elements of § 1505, the government must prove (1) that a proceeding was pending before a federal department or agency; (2) that the defendant was aware of the proceeding; and (3) that the defendant intentionally endeavored to obstruct the proceeding. Considering that "official proceeding" includes a proceeding before a federal government or agency, by proving § 1505, the government also proves a violation of § 1512(c)(2). That the government must prove that the proceeding before the agency was pending does not negate that proof of § 1512(c)(2) is subsumed in § 1505.

To be clear, the problem is not that the same conduct is being prosecuted under both statutes. A defendant may be charged under two statutes for the same actions. *Starks*, 472 F.3d at 469 ("We focus on the . . . elements of the charged offense, not the overlap in the proof offered to establish them, because a single act may violate several statutes . . . ."). However, a defendant may not be charged with separate offenses when the elements of one offense wholly encompass the elements of another. Because proving § 1505 automatically establishes each element of § 1512(c)(2), charging the same conduct under both statutes fails the *Blockburger* test. Accordingly, I recommend that defendants' motion to dismiss either Count 4 or 5 as multiplicitous be granted.

3.       *Defendants' Joint Motion to Dismiss Counts 1, 3, 4, 5, 6  of the Indictment and to Prohibit Evidence of Asbestos Testing Results*

Defendants move to dismiss Counts 1, 3, 4, 5 and 6 of the indictment for lack of sufficient evidence to establish subject matter jurisdiction and prohibit evidence of asbestos testing results of materials whose authenticity cannot be established. (Docket # 72.) The government responded that the establishment of the threshold quantity of material that contains asbestos is an element of the offense, not a question of subject matter jurisdiction. In regards to the chain of custody challenge, the government responded that this is not properly addressed by a motion to dismiss, but rather is a matter to be addressed at trial through cross-examination. (Docket # 77.)

In their reply, defendants withdrew their request that Counts 1, 3, 4, 5, and 6 be dismissed on those grounds. However, defendants request a pretrial evidentiary hearing on the chain of custody for the tested asbestos samples. (Docket # 93.) The defendants argue that because the establishment of the chains of custody for the various samples will require the testimony of no less than nine witnesses, it will be far easier for the court to hear those witnesses and make a determination prior to trial than it will be to do so during the trial. (*Id.*)

As defendants have withdrawn the motion to dismiss, this motion is now moot. As to the request for a pretrial hearing regarding the chain of custody, because this is essentially a motion in limine, I defer to the trial judge on whether to hold an evidentiary hearing before trial, or to address this during the course of the trial.

4.      *Defendants O'Connell, McNamee and the Grede Defendants' Motion to Dismiss Count 7, or in the Alternative For A Bill of Particulars*

Count 7 of the indictment charges the defendants with negligently releasing asbestos into the "ambient air" and "negligently placing one or more persons in imminent danger of death or bodily injury" in violation of 42 U.S.C. § 7413(c)(4), the criminal endangerment provision of the Clean Air Act. (Docket # 1 at 31.) Ambient air is not defined in the Clean Air Act. However, following the passage of the Clean Air Act in 1970, the EPA defined ambient air as "that portion of the atmosphere, external to buildings, to which the general public has access." 40 C.F.R. § 50.1(e).

Defendants move to dismiss Count 7, or alternatively, for a bill of particulars on the ground that the indictment failed to adequately allege that the defendants released asbestos into the "ambient air" as that term is defined by the EPA. The government responds that the EPA's definition of "ambient air" does not apply. Rather, because the Clean Air Act's criminal endangerment provision does not define the term "ambient air," the government argues the ordinary, plain meaning of "ambient air" applies. (Gov't Resp. at 2, Docket # 78.) As such, the government submits that Count 7 adequately informs the defendants of the charges against them.

4.1 "Ambient Air"

I begin with the meaning of "ambient air" as used in 42 U.S.C. § 7413(c)(4). "The cardinal rule of statutory interpretation is that courts 'must first look to the language of the statute and assume that its plain meaning accurately expresses the legislative purpose.'" *United States v. Miscellaneous Firearms, Explosives, Destructive Devices and Ammunition*, 376 F.3d 709, 712 (7th Cir.2004) (internal citations omitted), *cert. denied*, 544 U.S. 1019 (2005).  In determining whether the meaning of statutory language is plain or ambiguous, courts look

to the specific language at issue, the context in which the language is used, and the broader context of the statute as a whole. *Id.* (internal citation omitted). The court will not construe a statute in a way that makes words or phrases meaningless, redundant, or superfluous. *Id.* (citing *Welsh v. Boy Scouts of America*, 993 F.3d 1267, 1272 (7th Cir. 1993)). Further, in determining plain meaning, courts often look to dictionaries. *Sanders v. Jackson*, 209 F.3d 998, 1000 (7th Cir. 2000) (internal citation omitted).

These well-established rules of statutory construction are strictly applied when interpreting criminal statutes. It has been long settled that "penal statutes are to be construed strictly," and that one "is not to be subjected to a penalty unless the words of the statute plainly impose it." *United States v. Campos–Serrano*, 404 U.S. 293, 297 (1971) (internal citations omitted).

Here, the noun "air" is common and poses no difficulty in interpretation. It is the meaning of the modifier "ambient" which is contested. Again, "ambient air" is not defined within the Clean Air Act. Webster defines "ambient" as "existing or present on all sides: encompassing." "ambient" *Merriam-Webster Online Dictionary* 2017. https://www.merriam-webster.com/dictionary/ambient.com (last visited 30 Aug. 2017). Black's Law Dictionary contains no entry for "ambient" or "ambient air" but, it does contain entries for "ambient conditions" and "ambient standards" which are helpful. "Ambient conditions" is "weather or atmospheric conditions in a place. It changes from day to day." "What is Ambient Conditions" *The Law Dictionary* http://thelawdictionary.org/ambient-conditions/ (last visited Aug. 30 2017). "Ambient standards" are the "maximum pollutants in a building and its surroundings." "What is Ambient Standards," *The Law Dictionary*, http://thelawdictionary.org/ambient-standards/ (last visited Aug. 31, 2017). From

Webster's definition and the above usages of the word ambient, I conclude that the ordinary meaning of "ambient" means surrounding or encompassing and that "ambient air" does not necessarily exclude air inside a building.

The statutory context read as a whole confirms this meaning. The criminal endangerment provision contains an affirmative defense. It provides that "[i]t is an affirmative defense to prosecution that the conduct charged was freely consented to by the person endangered and that the danger and conduct charged were reasonably foreseeable hazards of . . . an occupation, a business, or a profession." 42 U.S.C. § 7413(c)(5)(C)(i). This consent defense does not distinguish between those who are inside and outside of buildings. It is written in terms of occupational, business, or professional connections to the hazard, not inside or outside air. The absence of limiting language in the affirmative defense demonstrates that Congress did not intend to limit "ambient air" in the criminal endangerment statute to just outside air "external to buildings to which the general public has access." Stated differently, applying the EPA definition to the criminal endangerment provision would rewrite the affirmative defense. This rewrite would allow only workers or others professionally connected to the hazard who are external to the building to which the general public have access to consent, but not those who are inside the building and closest to the hazard to consent. Nothing in the text supports such a rewrite.

There are no Seventh Circuit decisions or district court decisions from this circuit addressing this issue. However, the defendants' argument is supported by *United States v. W.R. Grace*, 455 F. Supp. 2d 1172, 1174 (D. Mont. 2006), which applied the EPA's definition of ambient air in a criminal prosecution under 42 U.S.C § 7413(c)(5)(A). I do not find *Grace* to be persuasive. As discussed earlier, under the established rules of statutory

construction, the court must begin with the text at issue, in this case the criminal endangerment provision under 42 U.S.C. §7314(c)(4). While the court in *Grace* looked to the definition of "ambient air" in light of the national and state air quality provisions that use the term, it did not examine the text of the criminal endangerment provision under 42 U.S.C. § 7413(c)(4). Specifically, the court did not analyze "ambient air" in context of the affirmative defense contained in the statute, or it did not read the criminal endangerment provision as a whole.

Defendants also invoke the rule of lenity to support applying the EPA definition. The mandate of the rule of lenity is that ambiguities in criminal statutes must be resolved in favor of the accused and its function is to ensure that fair warning is given of what the law requires, that no person be at risk of criminal sanction and opprobrium unless Congress clearly and unmistakably defines the actions prohibited or required. *Campos–Serrano*, 404 U.S. at 297; *United States v. Pitt–Des Moines, Inc.*, 168 F.3d 976, 984 (7th Cir. 1999); *United States v. Vang*, 128 F.3d 1065, 1072 (7th Cir. 1997) (reasoning that concerns of fair notice and arbitrary enforcement animate the rule of lenity), *cert. denied*, 522 U.S. 1140 (1998). However, as is the case here, not every proposed or possible ambiguity or alternative interpretation or split of judicial interpretations trigger the rule of lenity; instead, there must be "a grievous ambiguity or uncertainty in the language and structure of the Act," *Ranum*, 96 F.3d at 1030, that is unresolved even after textual, historical, and intentional analysis. *Caron v. United States*, 524 U.S. 308, 316 (1998) ("The rule of lenity is not invoked by a grammatical possibility.").

Furthermore, the rule of lenity does not apply if the ambiguous reading relied on is an implausible reading of the congressional purpose. *Reno v. Koray*, 515 U.S. 50, 65 (1995)

("The rule of lenity applies only if, 'after seizing everything from which aid can be derived,' we can make 'no more than a guess as to what Congress intended.'") (internal citations omitted); *Moskal v. United States*, 498 U.S. 103, 107–08 (1990); *United States v. Balint*, 201 F.3d 928, 935 (7th Cir. 2000) ("The rule of lenity is unavailable to us if the purported ambiguity in a statute can be resolved through normal methods of statutory construction."). Here, it has been noted that Congress' purpose to protect work place conditions—not only in the criminal endangerment provision of the Clean Air Act, but also the endangerment provisions of the Clean Water Act and Resource Conservation and Recovery Act—makes it unlikely that it intended to exclude indoor air from asbestos hazardous legislation. ARNOLD W. REITZE JR., AIR POLLUTION CONTROL LAW: COMPLIANCE & ENFORCEMENT, 579 (Environmental Law Institute, 2001). Other commentators have discussed how defining "ambient air" as "outside air" is inconsistent with Congress' intent and to protect workers. James Miskiewicz, John S. Rudd, *Civil and Criminal Enforcment of the Clean Air Act After the 1990 Amendments*, 9 PACE ENVTL. L. REV. 281, 394-395 (1992).

Finally, the EPA's own regulations undermine the defendants' argument that using a definition of "ambient air" that includes inside air fails to give defendants fair warning of the criminality of their actions. While the EPA defines ambient air as essentially "outside air" in 40 C.F.R. § 50.1(e), the EPA has also issued regulations used to protect workers from asbestos in locations not limited to outdoor air. 40 C.F.R. § 61.140-61.156. For example, the EPA states that the asbestos standards and regulations apply to "other asbestos regulations"—such as 29 C.F.R. § 1926.1101—which is a workers protection regulation "for all construction work involving asbestos . . . ." 40 C.F.R. § 61.156. This regulation makes no distinction between indoor and outdoor construction workers.

In sum, applying the established rules of statutory construction, the ordinary meaning of ambient air does not exclude indoor air. This is supported by the statutory context, specifically, the affirmative defense which makes no distinction between indoor and outdoor air.

### 4.2 Sufficiency

Having addressed the definition of "ambient air," I turn to the sufficiency argument.

As indicated above, 42 U.S.C. § 7413(c)(4) reads as follows:

> Any person who negligently releases into the ambient air any hazardous air pollutant . . . who at the time negligently places another person in imminent danger of death or serious bodily injury shall, upon conviction, be punished by a fine under Title 18 or by imprisonment for not more than 1 year . . . .

Count 7 of the indictment in this case states as follows:

> Between . . . October 2011 and . . . January 2012 . . . [the defendants] negligently released and caused the release of asbestos . . . into the ambient air and, at the time of the release, negligently placed one or more persons in imminent danger of death or serious bodily injury.

> All in violation of [42 U.S.C § 7413(c)(4)] and [18 U.S.C § 2].

Under Fed. R. Crim. P. 7(c)(1), the indictment must "be a plain, concise, and definite written statement of the essential facts constituting the offense charged." An indictment is sufficient if it: (1) states the elements of the offense charged; (2) fairly informs the defendant of the nature of the charge so that he may prepare a defense; and (3) enables him to plead an acquittal or conviction as a bar against future prosecutions for the same offense. *United States v. White*, 610 F.3d 956, 958 (7th Cir. 2010). Once the elements of the crime have been specified, an indictment need only provide enough factual information to enable a defendant to identify the conduct on which the government intends to base its case.

*United States v. Fassnacht*, 332 F.3d 440, 446 (7th Cir. 2003). "The defendant's constitutional right is to know the offense with which he is charged, not to know the details of how it will be proved." *Id.* (internal citation omitted). Simply tracking the language of the charging statute will generally suffice. *White*, 610 F.3d at 958-59.

On a pretrial motion to dismiss, an indictment "is reviewed on its face, regardless of the strength or weakness of the government's case." *Id.* at 958. A defendant may not, via pretrial motion, challenge the sufficiency of the government's proof. *See United States v. Yasak*, 884 F.2d 996, 1001 (7th Cir. 1989) ("A motion to dismiss is not intended to be a 'summary trial of the evidence.'"); *see also* Fed. R. Crim. P. 12(b)(2) (stating that the court must be able to decide pretrial motions "without a trial of the general issue"). The court dismisses an indictment only if the government's inability to prove its case appears convincingly on the face of the indictment. *United States v. Castor*, 558 F.2d 379, 384 (7th Cir. 1977).

In this case, the indictment tracks the language of the statute and lists each element of the offense. Furthermore, the indictment informs the defendants of the underlying facts which form the basis for each count. Specifically, the indictment alleges in or about January 2012, "D.A. and at least five Grede employees used jack hammers, chisels and other tools and equipment to remove the asbestos-containing insulation from the top of the treat oven." (Indictment ¶ 29.) The work allegedly generated clouds of dust which spread into the nearby maintenance shop and shipping area. (*Id.*) The indictment further alleges that the workers were not wearing disposable dust masks. (*Id.*) Finally, the indictment alleges that when the employees were vacuuming pieces of insulation from the top of the heat treat oven, "clouds of dust flowed through the open doorway to the outside of the building" when a facility

door was opened. (*Id.* ¶ 30.) On these facts, the indictment alleges the negligent release of asbestos into the ambient air as the word "ambient" is ordinarily used. Because the indictment tracks the statutory language and informs the defendants of the factual basis for the charge, the indictment is sufficient. I, therefore, recommend that the motion to dismiss Count 7 be denied. For the same reasons, I will also deny the motion for a bill of particulars.

5. *Defendants Joint Motion to Preclude the Government's Expert Witnesses from Offering Certain Opinion Testimony and Defendants Joint Motion In Limine: Government's Expert Witness Testimony-Inadequate Notice*

Defendants move to preclude the testimony of the government's expert witnesses. Defendants argue that the experts identified in the government's Notice and Summary of Expert Testimony are not qualified to offer opinions in the areas disclosed, their proposed opinions are too vague, too lacking in detail, and are not the product of the use and application of reliable principles or methods. (Docket # 68.) Separately, the defendants also move to preclude the testimony of the government's experts on the ground that the notice of their testimony does not comply with Fed. R. Crim. P. 16(a)(1)(G). (Docket # 57.)

The government responds that the defendants have moved to exclude the government's expert witnesses well before any disclosures are due pursuant to Crim. L.R. 16(a)(4) and that even where a party fails to comply with its disclosure obligation, exclusion of the testimony is not the only remedy. Defendants reply that the government's response ignored the *Daubert* issues raised by the defendants' motion and that the proposed experts are unqualified to testify to the fatality rates associated with exposure to chrysotile and asbestos and the prevalence of asbestos fiber in industrial environments even if the disclosure provided by the government so far is sufficient.

Given the adjournment of the jury trial, the government will be allowed to supplement its Notice and Summary of Expert Testimony. Considering the number of proposed experts and that the defense may want to retain their own experts, the notice is due 60 days prior to trial. For the same reasons, any *Daubert* challenges are due 30 days prior to trial. Accordingly, I recommend that Defendants Joint Motion to Preclude the Government's Expert Witnesses from Offering Certain Opinion Testimony (Docket # 68) and Defendants' Joint Motion In Limine: Government's Expert Witness Testimony-Inadequate (Docket # 57) be denied without prejudice.

6.    *Defendants' Joint Motion To Sever Count 7*

As discussed earlier in regards to defendants' motion to dismiss Count 7, Count 7 charges the defendants with negligently releasing asbestos and placing one or more persons in imminent danger. (Docket # 1 at 31.) The defendants argue that Count 7—the only misdemeanor count—should be severed because it will prejudice the defendants on Counts 1 through 6. (Def.'s Mot. to Sever at 3-4, Docket # 67.) Specifically, the defendants argue that joinder of Count 7 will result in jury confusion, prejudicial spillover, and a prolonged trial. (*Id.*) Further, the defendants assert that because Count 7 is the only count that requires expert testimony on the risks and potential diseases caused by asbestos exposure, the testimony will not only be confusing to the jury but also inflammatory. (*Id.* at 4.) Finally, defendants argue that evidence for Count 7 is irrelevant to Counts 1 through 6—which mostly concern the defendants' false statements.

The government responds that severing Count 7 will result in jury confusion. (Gov't Resp. at 4, Docket # 80.) Additionally, the government asserts that defendants' false statements were in response to the seriousness of the asbestos exposure, thus making the

evidence "directly relevant." (*Id.*) Furthermore, the government argues that a jury will be confused with hearing a trial on the "cover-up" actions by the defendants without hearing evidence of the underlying crime. (*Id.*)

Rule 14(a) authorizes a district court to order separate trials on individual counts "[i]f it appears that a defendant or the government is prejudiced by a joinder of offenses" for a single trial. *United States v. Alexander*, 135 F.3d 470, 477 (7th Cir. 1998) (quoting Fed. R. Crim. P. 14(a)). In particular, joinder of offenses in a single trial reduces the expenditure of judicial and prosecutorial time and reduces the burdens on witnesses from testifying at multiple trials. *See United States v. Buljubasic*, 808 F.2d 1260, 1263 (7th Cir. 1987). Therefore, the risk of prejudice arising from a joint trial is generally outweighed by the economies of a single trial. *United States v. Carrillo*, 435 F.3d 767, 778 (7th Cir. 2006).

It is defendants' burden to demonstrate a strong showing of prejudice. *United States v. Moya–Gomez*, 860 F.2d 706, 767–68 (7th Cir. 1988). A mere showing of some prejudice will not warrant severance. *United States v. Madison*, 689 F.2d 1300, 1305 (7th Cir. 1982). Rather, defendants must show that they are unable to obtain a fair trial without severance, not merely that their chances of acquittal would be higher at a separate trial. *Alexander*, 135 F.3d at 477; *United States v. Thornton*, 197 F.3d 241, 255 (7th Cir. 1999). Thus, a motion to sever should be denied unless there appears "a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993).

Here, defendants argue that there is a substantial risk of jury confusion and that the evidence regarding the risks and potential illnesses caused by asbestos exposure will prejudice the jury's consideration of the other counts. However, the Seventh Circuit has

repeatedly held that jury limiting instructions provide an adequate safeguard against the risk of prejudice in the form of jury confusion. *Alexander*, 135 F.3d at 478. Moreover, courts presume that a jury will capably sort through the evidence and will follow limiting instructions from the court to consider each count separately. *Thornton*, 197 F.3d at 256. Defendants have not shown that jury instructions would be inadequate to prevent confusion nor have they shown that the jury would have difficulty following an instruction to consider the evidence as to each count separately.

Also, severing Count 7 would result in at least some, if not many of the witnesses, with the exception of the expert witnesses, having to testify in two trials. Weighing these considerations, I conclude severance is not warranted here. Defendants' motion to sever Count 7 is therefore denied.

### 7.  *Defendants' Joint Motion for Independent Testing*

Pursuant to Fed. R. Crim. P. 16(a)(1)(E) and (F), defendants moved for independent testing of the asbestos-containing materials. (Docket # 58.) The government has responded that it will cooperate with the defendants to permit independent testing. Accordingly, this motion is moot.

### 8.  *Defendants' Joint Motion For Notice of Intent to Use Other Acts Evidence*

Defendants, pursuant to Fed. R. Evid. 404(b), move for an order requiring the government to provide notice of its intent to use other acts evidence not less than 30 days before trial. (Docket # 59.)  The government responded that it will comply with this request. Thus, the motion is moot.

*9.      Defendants' Joint Motion For Early Disclosure of Summary Evidence*

Defendants move for an order requiring the government to disclose, not less than 15 days before trial, the contents of any summary document or exhibit which the government intends to use or introduce at trial, pursuant to Fed. R. Evid. 1006. (Docket # 61.) The government has also agreed to this request. Thus, the motion is moot.

*10.     Defendants' Joint Motion For a Bill of Particulars: Unindicted Co-conspirators and Defendants' Joint Motion for a Pretrial Proffer of Co-conspirator Statements.*

Defendants move for an order requiring the government to file a bill of particulars identifying any unindicted co-conspirators in this case (Docket # 62.) Relatedly, defendants move for an order requiring the government to file a *Santiago* proffer. (Docket # 64.)  The government responded that it does not presently intend to introduce into evidence any co-conspirator statements. Defendants request that in the event it changes its position, the government should be ordered to file a bill of particulars identifying the names of unindicted co-conspirators not less than the 15 days before trial.

Despite the open file policy, given the voluminous nature of the discovery in this case, defendants' request is reasonable and not burdensome to the government. If the government changes its position regarding unindicted co-conspirators, it shall file a bill of particulars listing the unindicted co-conspirators not less than 15 days prior to trial. Defendants' joint motion number 11 is conditionally granted and defendants' joint motion number 12 is moot.

**NOW, THEREFORE, IT IS RECOMMENDED** that the defendants' joint motion to dismiss Counts 2, 4, and 5 and strike paragraphs 64 and 65 (Docket # 54) be **DENIED**;

**IT IS FURTHER RECOMMENDED** that defendants' joint motion to dismiss either Count 4 or Count 5 as multiplicitious (Docket # 63) be **GRANTED**;

**FURTHERMORE**, defendants' joint motion to dismiss Counts 1, 3, 4, 5, and 6 of the indictment and prohibit evidence of asbestos testing results (Docket # 72) is **MOOT**; The request for pretrial evidentiary hearing on the chain of custody is deferred to the trial judge;

**IT IS FURTHER RECOMMENDED** that defendants motion to dismiss Count 7, or in the alternative a bill of particulars (Docket # 56) be **DENIED**;

**IT IS FURTHER RECOMMENDED** that defendants' joint motion to preclude government's expert witness from offering certain testimony (Docket # 68) and Defendants' joint motion in limine (Docket # 57) be **DENIED WITHOUT PREJUDICE**; The government supplemental Notice and Summary of Expert Testimony is due **60 days prior to trial**. *Daubert* challenges are due **30 days prior to trial**.

**FURTHERMORE**, defendants' joint motion to sever Count 7 (Docket # 66) is **DENIED**;

Defendants' joint motion for independent testing (Docket # 58) is **MOOT**;

Defendants' joint motion for early disclosure of summary evidence (Docket # 61) is **MOOT**;

Defendants' joint motion for a bill of particulars (Docket # 62) is **CONDITIONALLY GRANTED**. If the government changes its position regarding unindicted co-conspirators, it shall file a bill of particulars **not less than 15 days** prior to trial.

**FURTHERMORE**, the motion for a pretrial proffer of co-conspirator statements (Docket # 64) is **MOOT**;

Your attention is directed to General L.R. 72(c), 28 U.S.C. § 636(b)(1)(B) and Federal Rules of Criminal Procedure 59(b), or Federal Rules of Civil Procedure 72(b) if applicable, whereby written objections to any recommendation or order herein, or part thereof, may be filed within fourteen days of the date of service of this recommendation or order. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to file a timely objection with the district court shall result in a waiver of a party's right to appeal. If no response or reply will be filed, please notify the Court in writing.

Dated at Milwaukee, Wisconsin this 5th day of September, 2017.

BY THE COURT

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge