# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                              Case No. 17-CR-50

STEVEN G. O'CONNELL, PETER J. MARK,
CHRISTY L. MCNAMEE, GREDE, LLC and
GREDE II, LLC (aka GREDE WISCONSIN
SUBSIDIARIES, LLC),

        Defendants.

---

## ORDER ADOPTING MAGISTRATE JUDGE'S RECOMMENDATION
## AND GRANTING IN PART AND DENYING IN PART
## DEFENDANTS' MOTIONS TO DISMISS

---

On March 7, 2017, a grand jury in this district returned a seven-count indictment charging Steven G. O'Connell; Peter J. Mark; Christy L. McNamee; Grede, LLC; and Grede II, LLC; with violating federal asbestos regulations, conspiring to defraud the United States, making willful false statements to the government, acting corruptly to impede a federal investigation endangering the safety of others by releasing asbestos into the ambient air. The charges arise out of an effort to refurbish an old heat treat oven at the Grede foundry in Berlin, Wisconsin in 2011. The defendants have pled not guilty, and a jury trial is scheduled to commence on January 22, 2018.

The defendants filed 12 pretrial motions, each of which has been addressed in the Order and Recommendation of Magistrate Judge Nancy Joseph, who was assigned responsibility for pretrial proceedings. Magistrate Judge Joseph recommended that the court grant the defendants' motion to dismiss either Count 4 or Count 5 of the indictment as multiplicitous and conditionally granted their motion for a bill of particulars identifying unindicted co-conspirators. The Magistrate Judge

either denied, recommended denial, or found moot the remainder of the defendants' motions. The government filed no objection to Magistrate Judge Joseph's recommendation that either Count 4 or Court 5 be dismissed, and therefore the court will adopt her recommendation and allow the government to elect which count will remain. The defendants filed objections to Magistrate Judge Joseph's recommendations to deny three of their motions. This order will address their objections. In all other respects, the Recommendation is adopted in full.

The defendants first object to Magistrate Judge Joseph's recommendation that the court deny their motion to dismiss Counts 2, 4, and 5 and strike paragraphs 64 and 65 of the indictment. Count 2 charges the defendants with knowingly and willfully making and using a false writing or document, knowing the same to contain a materially false, fictitious or fraudulent statement or entry, in any matter within the jurisdiction of the executive branch of the federal government in violation of 18 U.S.C. § 1001(a)(3) and 2. Count 4 charges the defendants with corruptly influencing, obstructing, and impeding the due and proper administration of the law under which a pending proceeding before the United States Department of Labor's Occupational Safety and Health Administration (OSHA) and the Occupational Safety and Health Review Commission (OSHRC) in violation of 18 U.S.C. § 1505 and 2. Count 5 charges the defendants with corruptly obstructing, influencing and impeding an official proceeding before OSHA and the OSHRC in violation of 18 U.S.C. § 1212(c)(2) and 2.

The defendants' argument for dismissal of these counts is that they also should be dismissed because an essential element of each charge is missing from the indictment. The missing element, they contend, is materiality, which is explicitly an element of Count 2 and implicitly an element of Counts 4 and 5. As to each count, the defendants note that the indictment alleges a single false statement. That statement, which was contained in a document entitled "Asbestos Awareness

Training," was that during the reconditioning of a heat treat oven at the Grede Foundry that management had decided to refurbish, "some undisturbed material behind a wall was found to contain a small percentage of asbestos" and "[b]ecause this area was not disturbed, employees were not exposed to this asbestos." Even assuming the statement was false, the defendants argue, the statement cannot be considered material since, according to the indictment itself, it was made after OSHA had completed its investigation, drawn its own conclusions for its own reasons, and decided on enforcement sanctions. Since the statement was made after OSHA closed its investigation and issued the citation, the defendants contend that it could not be considered material or capable of corrupting the proceedings of a federal agency.

The government countered that the false statement was material because it was submitted prior to the parties executing the settlement agreement. After issuing the citation, OSHA offered Grede an opportunity to reduce its penalty if it provided evidence of its corrective actions. The government asserts that the documents the defendants provided, including the Training Documents, had an effect on, or were capable of affecting, the final settlement and was therefore material.

The defendants dispute the government's assertion, but the Magistrate Judge correctly concluded that a motion to dismiss is not the time to resolve factual disputes. The defendants insist that a statement that is made after the final action in a proceeding cannot be material to the proceeding. That, of course, is true. But the government asserts that the final act had not yet been taken, or could have been altered, were it not for the materially false statement of the defendants. The government's assertion may not be true, but that is a matter for a jury to decide; not the court. "A motion to dismiss is not intended to be a 'summary trial of the evidence.'" *United States v. Yasak*, 884 F.2d 996, 1001 (7th Cir. 1989) (quoting *United States v. Winer*, 323 F.Supp. 604, 605 (E.D.Pa. 1971)). "Such a motion is directed only to the validity of the indictment or the information,

3

and it tests only whether an offense has been sufficiently charged." *Id.* "Put another way, a motion to dismiss an indictment is more akin to a civil Rule 12(b)(6) motion than to a civil summary judgment motion." *United States v. Apple*, 927 F.Supp. 1119, 1121 (N.D. Ind. 1996); *see also United States v. DeLaurentis*, 230 F.3d 659, 660 61 (3d Cir. 2000) (stating "[u]nless there is a stipulated record, or unless immunity issues are implicated, a pretrial motion to dismiss an indictment is not a permissible vehicle for addressing the sufficiency of the government's evidence"); *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992) (*per curiam*) (stating "there is no summary judgment procedure in criminal cases. Nor do the rules provide for a pretrial determination of the evidence"). I therefore conclude for the reasons stated here and in the Magistrate Judge's Report and Recommendation that the defendants' motion to dismiss Counts 2, 4, and 5 of the indictment on the ground that the indictment fails to allege an essential element of the crimes should be denied.

The defendants also object to the Magistrate Judge's recommendation that their motion to dismiss Count 7 be denied. Count 7 charges the defendants with negligently releasing and causing the release of asbestos into the ambient air in violation of 42 U.S.C. § 7413(c)(4) and 18 U.S.C. § 2. The defendants contend that this charge should be dismissed because the indictment fails to establish that they released asbestos into the "ambient air" within the meaning of that phrase under the Clean Air Act.

There is some merit to the defendants' argument. The Clean Air Act was enacted in response to concerns about the discharge of pollutants into the air we all breathe; in other words, the air outside. "In 1970, Congress enacted the Clean Air Act Amendments, Pub.L. No. 91 604, 84 Stat. 1676, to establish minimum air quality standards that would regulate the emission of certain pollutants into the atmosphere." *Wisconsin Elec. Power Co. v. Reilly*, 893 F.2d 901, 903

(7th Cir. 1990). Although the Act itself contains no definition of the phrase "ambient air," the regulations promulgated under the provisions of the Act concerning the National Ambient Air Quality Standards (NAAQS) defines "ambient air" as "that portion of the atmosphere, external to buildings, to which the general public has access." 40 C.F.R. § 50.1(e). The Magistrate Judge concluded, however, that this definition was written for the section of the Clean Air Act that governs NAAQS and was not intended to apply to endangerment provisions of the Act. Although the district court held otherwise in *United States v. W.R. Grace*, 455 F. Supp. 2d 1172, 1174 (D. Mont. 2006), the Magistrate Judge did not find the court's decision persuasive because the court did not analyze the term in the context of the provisions of the Act at issue here. She noted that the word "ambient" is defined as "existing or present on all sides: encompassing." Recommendation at 13 (quoting *Merriam-Webster Online Dictionary* 2017). Based on the plain meaning of the phrase "ambient air," but especially in light of the use of the context in which it appears in the criminal endangerment provisions of the Act, the Magistrate Judge concluded that it was not intended to exclude from its coverage the release of asbestos on the inside of a building so as to endanger workers.

It should be noted that the indictment in fact does allege that asbestos was released to the outside. It alleges that the "Super Sucker" that was used to vacuum off pieces of insulation from the top of the heat treat oven "blew dust from the insulation into the air. When a facility door was opened, clouds of dust flowed through the open doorway to the outside of the building." Indictment ¶ 30. Of course, it seems doubtful that this release is what the government had in mind in charging the defendants with placing another person "in imminent danger of death or serious bodily injury" by the release of a hazardous air pollutant into the "ambient air." The workers inside the building appear to be the only persons who might have been endangered, since they were likely the only

5

individuals exposed to the clouds of dust containing asbestos. Yet, there is no requirement that the hazardous air pollutant released into the "ambient air" caused the imminent danger. The statute simply requires that the defendants negligently released a hazardous air pollutant into the ambient air **and** at the time negligently placed another person in imminent danger of death or serious bodily injury. 42 U.S.C. § 7413(c)(4). Thus, it would seem that regardless of how "ambient air" is defined, the defendants' motion should be denied.

Notwithstanding this conclusion, however, I agree with Magistrate Judge Joseph's analysis that the plain meaning of the term and the context control. The word "ambient" does not mean "outdoors"; it means "existing or present on all sides; encompassing." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 36 (10th ed. 1999). Construing the term "ambient air" to include air inside the building does not make the word "ambient" superfluous. It means that it is not enough for the asbestos simply to be present in an isolated portion of the air; it must be diffused into the surrounding air, whether that air is inside or outside of the building.

I also agree with Magistrate Judge Joseph that the fact that the phrase "ambient air" is defined as air "external to buildings, to which the public has access" in Part 50 of Title 40 of the Code of Federal Regulations does not mean that the same definition applies in all other provisions of the Clean Air Act. Part 50 of Title 40 deals with National Primary and Secondary Ambient Air Quality Standards. The Ambient Air Quality Standards, after all, are intended to apply only to the air on the outside of buildings that all of us breathe. No such definition appears in the regulations governing asbestos removal, which generally takes place indoors.

The regulations governing demolition and renovation of facilities containing asbestos are located in another part of Title 40. 40 C.F.R. § 61.145. Those regulations explicitly refer to "outside air" when that is the intended meaning. *See, e.g.*, 40 C.F.R. § 61.149(b) **Standard for**

**waste disposal for asbestos mills** (stating "each owner or operator of any source covered under the provisions of § 61.142 shall . . . [d]ischarge no visible emissions to the outside air from the transfer of control device asbestos waste to the tailings conveyor . . . ."). Yet, section 7413(c)(4) applies to one who negligently releases a hazardous air pollutant into "the ambient air," and who "at the time negligently places another person in imminent danger of death or serious bodily injury." If ambient air in this part of the Act means outside air, then why do the regulations promulgated thereunder use the phrase "outside air" instead of "ambient air"?

The defendants are correct that "the Clean Air Act was enacted in part to address air pollution that 'resulted in mounting dangers to the public health and welfare, including injury to agricultural crops and livestock, damage to and the deterioration of property, and hazards to air and ground transportation' and 'to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare.'" Defs.' Obj. at 12 (quoting 42 U.S.C. § 7401). In furtherance of this purpose, the Act imposes criminal liability on any person who negligently releases into the ambient air any hazardous air pollutant or extremely hazardous substance and who at the time negligently places another person in imminent danger of death or serious bodily injury. It is not inconsistent with these purposes, however, for Congress to impose criminal liability on persons who negligently cause the release of a hazardous air pollutant inside their plant and thereby negligently place others in danger of death or serious bodily injury, even if the pollutant never finds its way outside of the building. For all of these reasons, and as more fully set forth in Magistrate Judge Joseph's Order and Recommendation, I conclude that the phrase "ambient air," as used in 42 U.S.C. § 7413(c)(4) includes ambient air inside the building where the renovation of the heat treat oven was occurring and that, therefore, the defendants' motion to dismiss Count 7 should be denied.

7

Lastly, the defendants object to the Magistrate Judge's recommendation denying their motion to sever Count 7 from the remaining counts so that it would be tried separately. The defendants argue that Count 7 should be severed so as to avoid prejudice they would suffer if it is tried with the other counts. In particular, the defendants argue they would be prejudiced if the jury heard the testimony the government intends to offer to show how their employees were placed in danger by the release of asbestos during the renovation project. I agree with the Magistrate Judge's resolution of this issue and adopt it in full without further elaboration.

**IT IS THEREFORE ORDERED** that the defendants' joint motion to dismiss Counts 2, 4, and 5, and strike paragraphs 64 and 65 of the indictment (ECF No. 54) is **DENIED.**

**IT IS FURTHER ORDERED** that the defendants joint motion to dismiss either Count 4 or Count 5 as multiplicitous (ECF No. 63) is **GRANTED.**

**IT IS FURTHER ORDERED** that the motion to dismiss Count 7 or, in the alternative, for a bill of particulars (ECF No. 56) is **DENIED.**

**IT IS FURTHER ORDERED** that the defendants' joint motion to preclude the government's expert witness(es) from offering certain testimony (ECF No. 57) is **DENIED WITHOUT PREJUDICE**; the government's supplemental Notice and Summary of Expert Testimony is due **60 days prior to trial**, and Daubert challenges are due **30 days before trial**.

**IT IS FURTHER ORDERED** that the remaining objections are overruled, and the Magistrate Judge's Order and Recommendation are adopted in full.

Dated at Green Bay, Wisconsin this ⎽⎽16th⎽⎽ day of October, 2017.

BY THE COURT:

⎽⎽s/ William C. Griesbach⎽⎽⎽⎽⎽⎽⎽⎽⎽
William C. Griesbach, Chief Judge
United States District Court.